# THE NATIONAL UNION FIRE INS. CO. OF PITTS-BURG, PA.,

*vs.*

## BALTIMORE ASBESTOS COMPANY, Inc.

*Insurance: cancellation; notice; agent.*

Where an insurance policy provides that notice of cancellation must be given by the insurer to the insured, such notice must be given to the insured himself or to someone duly authorized to receive it on his behalf. A broker or agent employed for the purpose of procuring insurance has no implied authority to cancel or to accept an operative notice of cancellation. p. 124

The fact that the person, upon whom notice of cancellation of a policy was served, had possession of the policy at the time does not affect the question, when he was in possession of it for a distinct, definite purpose, wholly apart from any cancellation. p. 125

*Decided December 19th, 1913.*

Appeal from the Circuit Court of Baltimore City (DUFFY, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, PATTISON, URNER and STOCKBRIDGE, JJ.

*John B. Deming* (with a brief by *Whitelock, Deming* and *Kemp*), for the appellant.

*Clarence A. Tucker* and *Isaac T. Parks, Jr.,* (with *Harry L. Price* and *Harman, Knapp, Ulman & Tucker,* on the brief), for appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

In the spring of 1912 The Baltimore Asbestos Company was solicited by a Mr. Boeckel, who was in some manner connected or associated with the firm of A. Page Boyce & Co., insurance agents and brokers, for the insurance on the plant of the Asbestos Company at Revell, Maryland. In response to his solicitation he was directed to place insurance thereon to the amount of $11,600. At this interview Mr. Boeckel said to Mr. Preston, who was acting for the Asbestos Co., that it would first be necessary for him to make an inspection and survey of the property, which he did on the day following, and thereafter policies were issued to an aggregate amount of $11,600—distributed among seven companies. At some later date, not precisely fixed, three of the companies which had originally underwritten a portion of the risk, viz: the General, the Duchess and the Teutonia, gave notice of cancellation, in accordance with the terms of their policies, and their places were filled up through the agency of Mr. Boeckel, by the Monongahela doubling the amount of its policy, and the balance being covered by a policy issued under date of July 3rd, 1912, by the National Union Co. of Pittsburg, the present appellant. Eight days later the following notice was sent by Mr. F. W. Widemeyer, the local agent of the appellant, to Mr. Boeckel, but no notice was sent to the insured company:

"National Union Fire Insurance Co.,
Pittsburg, Pa.

Agency at Baltimore, Md., July 11, 1912.

Mr. William Boeckel,
216 E. German St., City.

Dear Sir—

We hereby give you notice that Policy No. 355 of the Duquesne Underwriters Agency Department of

National Union Fire Insurance Company, Pittsburg, Pa., issued to you covering on Balto. Asbestos .Co., Inc., situated at Revell's Station, A. A. Co., Md., will be cancelled five days from this date in accordance with its conditions as set forth in lines 51 to 55 thereof, and we further notify you that said Company will not be liable for any loss or damage by fire to the property described in said policy after the expiration of five days as herein stated."

Mr. Boeckel testified that he gave verbal information of the receipt of such notice to the Asbestos Company, but at what time he is unable to fix. The policy itself appears to have been at the time in the possession of Mr. Boeckel, to whom it had been sent for the purpose of having an endorsement placed on it, that in the event of loss, the insurance should be payable to a first and second mortgagees, as their interests might appear. The most definite approximation to a date when Mr. Preston had any notice whatsoever of a wish on the part of the appellant to cancel its risk, appears in a letter from the Boyce Company to the Asbestos Company of July 15th, 1912, in which, after referring to the request to have the mortgage indorsement placed on the policy; is the following:

"The Ducan Underwriters have requested the cancellation of their policy which we have delivered, and the amount of which we will replace at the first opportunity."

To this letter no reply appears to have been made.

It also appears that at some time after the receipt of the notice by Mr. Boeckel, he wrote across the policy the words "cancelled at date by company, full return premium," and on the 16th of July the policy was physically delivered by the Boyce Company to Mr. Widemeyer, the agent of the insurance company.

A fire took place on the premises of the Asbestos Company on the 15th of August, and when notified of the loss, the National Union Company denied all liability.

In this proceeding the Asbestos Company seeks to require the insurer to surrender to the appellee or bring into Court the policy, to have the cancellation indorsed on it, annulled, and the company required to pay its proper pro rata of the loss.

The first point raised is in regard to the cancellation. There can be no question that the notice given was insufficient under the terms of the policy, if it was necessary that such notice be given by the insurer to the insured. *American Fire Ins. Co.* v. *Brooks,* 83 Md. 29 ; *German Fire Ins. Co.* v. *Clarke Co.,* 116 Md. 622.

It is insisted, however, that the notice to Boeckel was notice to the insured. Boeckel was unquestionably the agent of the Asbestos Company for the placing of the insurance, but that fact did not invest him with any authority to receive notice of cancellation. "The rule of law in this regard is well settled; the notice must be given to the assured himself or to some one duly authorized to receive it on his behalf. A broker or agent employed for the purpose of procuring insurance has no implied authority to cancel, or to accept an operative notice of cancellation. On receiving the policies and transmitting them to the principal, his authority terminates. His duty is to get insurance for his customer, not to destroy it. Hence it follows reasonably that notice of cancellation by the company served upon such an agent of the insured is unavailing." *Richards on Insurance Law,* 388, 389; *Ins. Co.* v. *Forcheimer,* 86 Ala. 541; *Mut. Assurance Soc.* v. *Scottish Ins. Co.,* 84 Va. 116; *Grace* v. *Ins. Co.,* 109 U. S. 278; *Broadwater* v. *Lion Fire Ins. Co.,* 34 Minn. 465; *Green* v. *Star Fire Ins. Co.,* 190 Mass. 586; and many others fully collected in *Woodenware Co.* v. *German F. Ins. Co.,* 38 L. R. A., N. S., 623.

The effect of this well settled rule is sought to be obviated in several ways. It is, of course, true as laid down in numer-

ous cases, that an assured may ratify an unauthorized cancellation, if he accepts as a substitute a new policy in place of that attempted to be cancelled. But that has no application in the present case, for the reason that no substitute policy was ever offered to and accepted by the Asbestos Company. On the contrary, Mr. Boeckel was never able to proffer another policy as a substitute for that of the National Union Company. The letter of Mr. Boeckel to the Asbestos Co., stating that the Insurance Company had requested a cancellation of the policy, made no mention of any notice or attempted notice under the terms of the policy, and the uncontradicted evidence is to the effect that Mr. Boeckel was not given any authority either to cancel a policy or accept notice of cancellation.

It is further urged that Boeckel was possessed of the authority by the course of dealing, both to procure insurance, accept notice of cancellation, and surrender a cancelled policy. Many cases were cited with reference to this line of defense. All cases involving this question are dependent each upon its own particular facts, and it would serve no good purpose to review them separately. Here again the facts as testified to, do not bear out the contention of the appellant. The custom of business, so far as there can be said to have been one, from the three instances of cancellation shown, was for Mr. Boeckel to procure a substitute policy, take it to Mr. Preston, and exchange it with him for the policy desired to be cancelled; a totally different procedure from what took place in this instance. It is apparently true that Mr. Boeckel was in possession of the policy when he received the notice, but he was in possession of it for a distinct, definite purpose, wholly apart from any cancellation.

The policy is also sought to be avoided upon the ground that the insurer had never received the premium therefor. There is no dispute that at the time the insurance was originally placed, the Asbestos Company paid Boyce & Co. the full premiums upon the total amount of the risk under-

written, $11,600.   What was, if any, the regular course of
dealing between the brokers, Boyce & Co., or Boeckel, and the
appellant?   This is testified to by Mr. Widemeyer, and he is
in no way contradicted upon this point.   A card was kept
upon which were noted the transactions between them, and
settlements made at intervals of 30 or 60 days.   The separate
premiums upon each policy were not paid at the time of the
issuance of the policy.   Following this custom, there was
noted on the card as of July 3rd, the date of the issue of the
policy, a debit, first against Boyce & Co., and then transferred
to Boeckel, of $87, as and for the premium upon the policy
involved in this case.   Then when the company reached a
determination to cancel the policy, it credited that amount
upon the card to offset the debit.   There is no evidence to
show that in this interval any of the regular periods for settle-
ment had arrived, and that Mr. Boeckel refused to make pay-
ment of the premium of this policy.   It is true that the
credit is entered as of date of July 3rd.   Under such a
method of dealing it would be manifestly inequitable now
to permit the company to relieve itself of liability by ante-
dating a credit, and claim that it had never assumed any
risk, when its own accounts show a charge of the premium,
and the evidence fails to show any request for the actual
payment of the premium, and an established practice to
collect such premiums only at regular intervals.

The appellee devoted some attention to the alleged non-
return of the unearned portion of the premium as affecting
the validity of the attempted cancellation, but in view of
the conclusions already reached, it is unnecessary to dwell
upon that phase of the case.

The decree of the Circuit Court of Baltimore City will
accordingly be affirmed.

*Decree affirmed, with costs.*