## KOLKER *v.* BIGGS

[No. 8, October Term, 1953.]

138

*Decided November 6, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*William Saxon,* for appellant.

*B. Conway Taylor, Jr.,* with whom were *Palmer R. Nickerson and Due, Nickerson, Whiteford and Taylor,* on the brief, for appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Benjamin Kolker, owner of the leasehold in the real property at 1131 East Lexington Street in Baltimore, brought this suit against Eleanor C. Biggs to obtain a judicial declaration that the ground rent claimed by defendant is extinguished under the statute of limitations

in the Landlord and Tenant Law. Code 1951, art. 53, sec. 36.

On April 2, 1909, Max Cohen, owner of the property in fee simple, leased it to Aaron Cohen, his executors, administrators and assigns, for 99 years, renewable forever, for an annual ground rent of $120, payable in equal semi-annual instalments, and then conveyed the fee, including ground rent and reversion, to Robert Biggs and Alice C. Biggs, trustees for Eleanor C. Biggs. On the same day the leasehold was conveyed back to Max Cohen.

In 1921 Cohen conveyed the leasehold to Diamantis Pardos and wife. In January, 1927, Pardos and wife conveyed it to Minnie Eaton, who mortgaged it to the B. I. L. Building and Loan Association. At that time the building association, which was established by Benjamin I. Levinson as a family enterprise, was being operated by the founder's son; but in 1929 the son was forced by illness to place most of the work in the hands of his son, S. Robert Levinson. The latter, as trustee, offered the leasehold at a foreclosure sale and sold it to the building association. In December, 1943, the building association conveyed it to Annie Levinson, S. Robert Levinson's mother. In June, 1944, Annie Levinson sold it at auction to complainant for $1,800.

Robert Biggs and Alice C. Biggs, trustees, continued as the owners of the ground rent and reversion from 1909 until Biggs' death in February, 1933, when Mrs. Biggs became the sole owner. Biggs' nephew, Richard D. Biggs, alleged that on account of the many difficult problems that beset him in the years that followed he forgot all about the ground rent until it was called to his attention nearly 20 years afterwards. In August, 1952, Biggs, acting as substituted trustee, conveyed the ground rent and reversion to his cousin, Eleanor C. Biggs. Miss Biggs entered suit in the People's Court to recover the ground rent from complainant.

Complainant thereupon filed the instant suit in the Circuit Court No. 2 to extinguish the ground rent and

to enjoin Miss Biggs from prosecuting her suit in the People's Court or any other proceeding for recovery of the ground rent. Defendant agreed to have the case heard without question of jurisdiction.

Richard D. Biggs testified that, upon his uncle's request, he sent a bill for the ground rent to the B. I. L. Building and Loan Association in September, 1932, which was slightly less than 20 years before defendant's demand for payment. The chancellor, giving credence to Biggs' testimony, dismissed the bill of complaint. Complainant appealed from that decree.

Ground rent leases, which were rare in England but common in Ireland, were introduced in Maryland before the Revolution. Seldom used in other States, they have been a favorite form of tenure in Baltimore. In the ground rent lease, as used in Maryland, the owner of the land in fee simple leases it for the period of 99 years, with a covenant for renewal from time to time forever upon payment of a small renewal fine, upon the condition that the lessee will pay a certain rent and that if the payment is in default the lessor may reenter and terminate the lease. The lessee also covenants to pay all taxes on the property. The leasehold is considered in the law as personal property, but in practical effect it is real property subject to payment of the ground rent and all taxes on the land and improvements. *Banks v. Haskie*, 45 Md. 207; *Culbreth v. Smith*, 69 Md. 450, 16 A. 112, 1 L. R. A. 538; *Moran v. Hammersla*, 188 Md. 378, 52 A. 2d 727.

Long ago it was found that Maryland's unique system of ground rent leases had resulted in the complication of many legal titles. Very often the ground rents were small and were not collected for many years, and when the land was subdivided and owned by many persons, it was difficult to obtain clear titles for the properties. In 1884, after urgent demands for remedial legislation for the quieting of titles, the Maryland Legislature enacted the statute of limitations in the Landlord and

Tenant Law.    Laws 1884, ch. 502, Code 1951, art. 53, sec. 36.

This Act, upon which complainant relies, reads as follows:

> "Whenever there has been no demand or payment for more than twenty consecutive years of any specific rent reserved out of a particular lot or any part of a particular lot under any form of lease, such rent shall be conclusively presumed to have been extinguished and the landlord shall not thereafter set up any claim thereto or to the reversion in the lot out of which it issued, or have the right to institute any suit, action or proceeding whatsoever to recover said rent or said lot; * * *."

The Act of 1884 is supplemental to the Statute of 21 James I, ch. 16, which is recognized as in force in this State. 2 Alexander's British Statutes, Coe's Ed., 599-628.    The effect of our Act, when it is shown that ground rent has been neither demanded nor paid for more than 20 consecutive years, is not only to bar the rent already due, but also to bar the reversionary interest of the owner of the fee, so that the lessee's rights are similar to the rights vested in a person holding by adverse possession under the British statute, including the right to maintain an action of ejectment for the recovery of the land even against the holder of the paper title who ousted him.  *Trustees of Sheppard and Enoch Pratt Hospital v. Swift & Co.,* 1940, 178 Md. 200, 208, 13 A. 2d 174.

As the Court said in *Safe Deposit & Trust Co. v. Marburg,* 110 Md. 410, 414, 72 A. 839, 841, the Legislature has the power to pass laws for the vesting of title in persons holding land by adverse possession, provided that the former owners have a reasonable time after the enactment to assert their rights.  Chief Judge Boyd, speaking for the Court in that case, made the following comment on the 1884 Act:  "As we adopted the English statutes which were in force on July 4,

1776, and which by experience had been found applicable to our conditions, and as that of 21 James I, Ch. 16, was held to be in force here, it was not necessary for the Legislature of Maryland to pass such a statute, but it has from time to time passed laws which have changed that statute and which prescribe the kind of evidence required to establish adverse possession."

In the instant case the testimony indicated that no ground rent had been paid for about 23 years, three years longer than required by the statute. While there was testimony that the B. I. L. Building and Loan Association, to whom Minnie Eaton had mortgaged the leasehold in January, 1927, had paid the ground rent in May, 1929, complainant's witness, S. Robert Levinson, testified that no rent had been paid for 15 years from May, 1929, to June, 1944, when complainant acquired the leasehold; and complainant testified that he had not paid any rent during the period of 8 years, from June, 1944, when he purchased the property, to July, 1952, when he received the first demand from defendant's attorney. Therefore the pivotal question was whether there had been no demand for payment for more than 20 years prior to July, 1952.

The testimony of defendant's witness, Richard D. Biggs, a clerk in his uncle's law office in 1932, was unequivocal. He testified as follows: "Uncle Robert became ill in the summer of 1932. As a matter of fact, he suffered severe attacks of vertigo and was very alarmed about his health, and in that period he delegated five or six duties to me, one of which was the checking and sending out of this bill for ground rent due on this property on Lexington Street."

When an effort was made to cast doubt on the possibility that the witness could remember such a trivial incident as the sending out of a bill after the lapse of approximately 20 years, he gave the following particulars: "Uncle Robert had his first attacks down at the office of vertigo. He called me in the library and told me not to say a word of this to his daughter. It

144

is very much impressed on my mind. At the same time he asked whether I would not take care of these things for him. * * * I don't know whether it was my youth or inexperience or not, but I made out the bill to 'B. I. L. L.' and Uncle Robert gave me the devil for it. * * * He thought I should have better sense. * * * I didn't say anything, except I tore it up and made out a correct bill by looking up the building association in the directory."

It is an established rule of evidence that the testimony of a witness that he properly addressed, stamped and mailed a letter raises a presumption that it reached its destination at the regular time and was received by the person to whom it was addressed. *Goodman v. Saperstein,* 115 Md. 678, 683, 81 A. 695; *Sloan v. Grollman,* 113 Md. 192, 198, 77 A. 577; *McFerren v. Gold-Smith-Stern Co.,* 137 Md. 573, 580, 113 A. 107, 18 A. L. R. 1125; *Stiegler v. Eureka Life Insurance Co.,* 146 Md. 629, 647, 127 A. 397; *Rosenthal v. Walker,* 111 U. S. 185, 4 S. Ct. 382, 386, 28 L. Ed. 395.

In this rule of evidence a distinction is noted between the United States postal service and the individual. The difference is that the Government's system will be judicially noticed without further evidence, while the individual's course of business may not appear sufficiently fixed under the circumstances to be of probative value. The fixed methods and systematic operation of the United States postal service are evidence of the delivery to the addressee of the mail placed for that purpose in the custody of the postal authorities. Of course, the rule is subject to the condition that the mail shall appear to have conformed to the principal regulations of the postal service, namely, that it shall have been sufficiently prepaid in stamps, correctly addressed, and placed in the appropriate receptacle. However, any person's usual course of business practice, such as the sending of notices or the placing of letters in the mailbox, may be admitted in evidence as an act of transmission or delivery. *Wolf v. Union Trust*

*Co.,* 150 Md. 385, 395, 133 A. 121; 1 *Wigmore on Evidence,* 3d Ed., sec. 95.

*Brailsford v. Williams,* 15 Md. 150, 159, does not control here, because the witness testified in that case that he had written a letter but did not know whether it had been mailed. The custom in his office was to write the letters of the firm and leave them on his desk for his clerk to take to the post office. The Court found that there was not sufficient evidence that the letter had been mailed, as compliance with the custom in the office had not been proved. However, the Court acknowledged in that case that the object of testimony of this nature is to aid the trial judge or jury in determining whether the act was done, not by express proof, but by a chain of circumstances from which an inference may be drawn.

At the trial of the case at bar Biggs testified positively that he sent the bill to the building association in September, 1932. It was not until after the case was appealed that complainant made the objection that Biggs failed to mention that he had put a postage stamp on the envelope. Since the testimony was admitted without objection and without any cross-examination as to the manner of transmission, we assume, as the chancellor did, that Biggs put a stamp on the envelope before putting it in the mailbox.

In *Stiegler v. Eureka Life Insurance Co.,* 146 Md. 629, 647, 127 A. 397, it was held that the evidence offered by the plaintiff was too indefinite and uncertain to have evidential value to establish affirmatively that he had received a letter from his employer on or before a certain date. It was definitely shown at the trial of that case that the address on the envelope was inaccurate and misleading. In the present case no objection was made in the Court below that the testimony of Biggs, defendant's witness, was inadmissible or too indefinite and uncertain to have evidential value. Moreover, it is clear that complainant, who applied to the court of equity for a decree declaring that the ground

rent had been extinguished, had the burden of proof. The finding of the chancellor was merely that complainant had failed to sustain the burden of proof.

It is true that Levinson denied that he ever received any bill from Biggs for ground rent. But we must keep in mind that the presumption, which was raised by Biggs' testimony, that a bill was sent and delivered to the building association was not conclusively rebutted by Levinson's testimony that he did not receive the bill. Levinson's testimony is considered with other facts and circumstances tending to rebut such presumption. *McFerren v. Goldsmith-Stern Co.*, 137 Md. 573, 580, 113 A. 107, 18 A. L. R. 1125.

The testimony was taken in open court. The chancellor had the opportunity to see and hear the witnesses and to observe their expression and demeanor on the stand. The Court of Appeals will not reverse a decision of a court of equity upon a finding of facts unless it is clearly apparent that the finding is not supported by the weight of the evidence. *Lickle v. Lickle*, 188 Md. 403, 52 A. 2d 910; *Cohen v. Orlove*, 190 Md. 237, 57 A. 2d 810; *Berman v. Leckner*, 193 Md. 177, 186, 66 A. 2d 392.

We cannot say that the chancellor's finding is not supported by the weight of the evidence. We must, therefore, affirm the decree dismissing the bill of complaint.

*Decree affirmed, with costs.*