WATTS, J.,
dissenting.
Respectfully, I dissent, and would reverse the circuit court’s grant of appellees’ motion for summary judgment.
In a matter of first impression, this Court is called upon to directly address the issue of ejectment as a remedy for non *228 payment of ground rent; and, oddly, this Court determines that the statutorily created remedy of ejectment — contingent on non-payment of rent by the lessee and proper notice by the lessor — is, indeed, a remedy but is “essential for the right of re-entry in Maryland grounds rents[,]” and, thus, Chapter 286 of the 2007 Laws of Maryland is unconstitutional. Majority Op. at 216-17, 85 A.3d at 246-47. So unusual is this conclusion that a detailed and reasoned review of the history of ground rent leases, relevant case law, and applicable statutes in Maryland is warranted.
As early as 1953, in Kolker v. Biggs, 203 Md. 137, 141, 99 A.2d 743, 745 (1953), we discussed the history and complications of ground rent leases in Maryland, explaining:
Ground rent leases, which were rare in England but common in Ireland, were introduced in Maryland before the Revolution. Seldom used in other States,[1] they have been a favorite form of tenure in Baltimore. In the ground rent *229 lease, as used in Maryland, the owner of the land in fee simple leases it for the period of 99 years, with a covenant for renewal from time to time forever upon payment of a small renewal fine, upon the condition that the lessee will pay a certain rent and that if the payment is in default the lessor may reenter and terminate the lease. The lessee also covenants to pay all taxes on the property. The leasehold is considered in the law as personal property, but in practical effect it is real property subject to payment of the ground rent and all taxes on the land and improvements.
Long ago it was found that Maryland’s unique system of ground rent leases had resulted in the complication of many legal titles.[2] Very often the ground rents were small and were not collected for many years, and when the land was *230 subdivided and owned by many persons, it was difficult to obtain clear titles for the properties.
(Citations omitted). See also Heritage Realty, Inc. v. Baltimore, 252 Md. 1, 3-6, 248 A.2d 898, 899-901 (1969) (discussing the development of ground rent law in Maryland).
Historically, ground lease owners in Maryland had three remedies for the nonpayment of ground rent: (1) distraint, see Heritage Realty, 252 Md. at 3, 248 A.2d at 900 (“Since the [ground] rent was categorized as a rent service, the remedy of distraint was available to the lessor.” (Citation omitted))[3]; (2) a civil action for a monetary judgment in the amount of the *231 past due ground rent, see Md.Code Ann., Real Prop. Art. (1974, 2003 Repl. Vol.) (“R.P.”) § 8-402.2(c)(2); and (3) prior to the enactment of Chapter 286, ejectment, which was governed by R.P. § 8-402.2(a) and authorized an action for possession of the property pursuant to R.P. § 14-108.1. Under R.P. § 8-402.2(a) and R.P. § 14-108.1, if a ground lease owner was successful in ejecting a ground lease tenant, the ground lease owner, who already possessed title to the land subjected to ground rent, also obtained title to the house on the land.
In December 2006, The Baltimore Sun published a thorough three-part series of articles highlighting the abuses of the ejectment remedy as used against ground lease tenants. In the first article, The Baltimore Sun reported:
Baltimore’s arcane system of ground rents, widely viewed as a harmless vestige of colonial law, is increasingly being used by some investors to seize homes or extract large fees from people who often are ignorant of the loosely regulated process, an investigation by The Sun has found.
Tens of thousands of Baltimore homeowners must pay rent twice a year on the land under their houses. If they fall behind on the payments, the ground rent holders can sue to seize the houses — and have done so nearly 4,000 times in the past six years, sometimes over back rent as little as $24, The Sun found.
Fred Schulte and June Arney, On shaky ground, The Baltimore Sun, Dec. 10, 2006, available at http://www.baltimoresun. com/business/real-estate/bal-groundrentl-2102006,0,2042038. story (last visited January 30, 2014). The article stated that its investigation revealed the following:
No other private debt collectors in Maryland can obtain rewards so disproportionate to what they are owed. In contrast [to] a foreclosure, the holder of an overdue ground rent can seize a home, sell it[,] and keep every cent of the proceeds. To prevent seizure, homeowners almost always have to pay fees that dwarf the amount of rent they owe.

Id.

In response to the outrage generated by what was seen as abuses of the ejectment remedy by ground lease owners, as *232 well as other problems with the ground rent system, State legislators proposed amendments to the ground rent statutes. See Fred Schulte and June Arney, Bills to tackle ground rents, The Baltimore Sun, Dec. 13, 2006, available at http:// articles.baltimoresun.com/2006-12-13/news/0612130289_l_ ground-rent (last visited January 30, 2014). One of those amendments — Chapter 286, concerning remedies for nonpayment of ground rent — was subsequently enacted. Chapter 286 was designed to eliminate the remedy of ejectment for non-payment of ground rent. The purpose of Chapter 286 was stated as follows:
FOR the purpose of applying provisions of law authorizing a landlord under a ground lease to bring an action for ejectment for nonpayment of ground rent to certain property; repealing provisions of law entitling the holder of a ground rent to reimbursement for certain expenses incurred in collecting past due ground rent and filing an action for ejectment; providing that the establishment of a lien is the remedy for nonpayment of a ground rent on certain residential property; requiring a certain person seeking to impose a lien to give a certain notice to certain persons in a certain manner; ... providing for the enforcement and foreclosure of a lien; ... providing that certain provisions of law authorizing a certain action for possession do not apply to certain actions for nonpayment of ground rent; ... and generally relating to remedies for nonpayment of ground rent.
As enacted, R.P. (1974, 2010 Repl. Vol.) § 8-402.3(c), applicable to residential property, eliminates the remedy of ejectment and now provides the following remedies to ground lease owners for nonpayment of ground rent:
(1) Notwithstanding any provision of a ground lease giving the ground lease holder the right to reenter, the establishment of a lien under this section is the remedy for nonpayment of a ground rent.
(2) This section does not affect the right of a ground lease holder to bring a civil action against the leasehold tenant *233 seeking a money judgment for the amount of the past due ground rent.[4]
The amendments to the ground rent statutes, including Chapter 286, did not change the ground lease owner’s ability to bring a civil action against a tenant for a money judgment in the amount of the past due ground rent, see R.P. § 8-402.3(c)(2), nor did the amendments alter the ground lease owner’s reversionary interest if the leaseholder fails to renew, see R.P. § 8-402.3(a)(3)(i) (defining a “Ground lease holder” as “the holder of the reversionary interest under a ground lease”).
Passage of the amendments to the ground rent statutes met with immediate challenges. In Muskin v. State Dep't of Assessments & Taxation, 422 Md. 544, 549-50, 30 A.3d 962, 965 (2011), we addressed a challenge to the constitutionality of one of the amendments — Chapter 290, the Ground Rent Registry Statute — which required the State Department of Assessments and Taxation (“SDAT”) to maintain an online registry of ground rent leases. Under Chapter 290, if a ground lease holder failed to register the property with SDAT by the statutory deadline, SDAT was authorized to issue an extinguishment certificate transferring the reversionary interest from the ground lease holder to the ground rent tenant.
To understand the issue currently before this Court, it is important to recognize what was not before the Court in *234 Muskin — i.e., in Muskin, we did not address the issue of ejectment as a remedy for non-payment of ground rent. In Muskin, the issue squarely before the Court was the propriety of extinguishment of a ground rent lease as a consequence for the failure to register the lease pursuant to Chapter 290. No one in Muskin failed to pay ground rent, and no one was subject to ejectment. Indeed, Chapter 290 did not purport to address or regulate in any manner the act of ejectment as a remedy for non-payment of ground rent.
In Muskin, 422 Md. at 550, 30 A.3d at 965, with the Honorable Glenn T. Harrell, Jr. writing for this Court, we held that the extinguishment and transfer provisions of Chapter 290 were invalid because they violated “specific prohibitions on the retrospective application of statutes that lead to the abrogation of vested rights and the taking of property without just compensation!;,]” but held that the registration requirement was valid. We explained Maryland’s constitutional protections for vested rights, stating: “Together, Maryland’s Declaration of Rights and Constitution prohibit the retrospective reach of statutes that would have the effect of abrogating vested rights.” Muskin, id. at 555, 30 A.3d at 968 (citation omitted). Quoting Dua v. Comcast Cable of Md. Inc., 370 Md. 604, 623, 805 A.2d 1061, 1072 (2002), we stated:
[I]t has been firmly settled by this Court’s opinions that the Constitution of Maryland prohibits legislation which retroactively abrogates vested rights. No matter how “rational” under particular circumstances, the State is constitutionally precluded from abolishing a vested property right or taking of a person’s property and giving it to someone else.
Muskin, 422 Md. at 556-57, 30 A.3d at 969.
In assessing the constitutionality of Chapter 290, we addressed “whether the statute [operated] retrospectively and abrogated] a vested right or [took] property without just compensation.” Id. at 557, 30 A.3d at 969. Applying the analysis of the Supreme Court of the United States in Landgraf v. USI Film Prods., 511 U.S. 244, 270, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), we held that Chapter 290 was a retrospec *235 tive statute because it “impact[ed] impermissibly the reasonable reliance and settled expectations of ground rent owners by virtue of its extinguishment and transfer features as the consequences for non-registration (or untimely registration) of ground rents.” Muskin, 422 Md. at 558, 30 A.3d at 970.
As to whether Chapter 290 as a retrospective statute imper-missibly abrogated vested rights, we stated:
A ground rent lease creates a bundle of vested rights for the ground rent owner, a contractual right to receive ground rent payments and the reversionary interest to re-enter the property in the event of a default or if the leaseholder fails to renew. These two rights cannot be separated one from the other; together they are the essence of this unique property interest, and as such, vested rights analysis must consider them together. As pointed out by the SDAT, there is no Maryland case on point that has held that the rights created under a ground lease are vested rights. Courts have struggled with the difficulty of determining a precise definition of vested rights.
... There can be no reasonable doubt that the reversionary interest to real property and the contractual right to receive ground rent are vested rights under Maryland law. Heritage Realty, 252 Md. at 11, 248 A.2d at 904 (recognizing the importance of the reversionary interest, stating that “[t]he owner [of the reversionary interest] is entitled to receive fair market value on condemnation”).
Muskin, 422 Md. at 559-60, 30 A.3d at 971 (footnotes and one citation omitted) (alterations, omission, and some emphasis in original). Accordingly, we held “that the extinguishment and transfer provisions of Chapter 290 [were] unconstitutional” because the statute was retrospective and abrogated vested property rights. Id. at 560, 30 A.3d at 971.
Most significantly, however, in Muskin, id. at 561, 30 A.3d at 971, we held that an exception to the general prohibition against statutes that abrogate vested rights exists in circumstances where the statute “applies solely to remedies and rules of evidence.” We explained:
*236 We have held consistently that the Legislature has the power to alter the rules of evidence and remedies, which in turn allows statutes of limitations and evidentiary statutes to affect vested property rights. Thistle v. Frostburg Coal Co., 10 Md. 129, 145 (1856) (holding that the Legislature has the power to alter and remodel the rules of evidence and remedies); Wilson v. Simon, 91 Md. 1, 6, 45 A. 1022, 1023 (1900) (holding that the Legislature may abrogate retrospectively a property or contract right if there are other remedies available); Allen v. Dovell, 193 Md. 359, 363-64, 66 A.2d 795, 797 (1949) (holding that the Legislature has the power to amend statutes of limitations so long as there is a reasonable time for enforcement of a cause of action); Langston [v. Riffe ], 359 Md. [396,] 407, 754 A.2d [389,] 394 [ (2000) ] (holding valid statutes that altered only the procedures involved in enforcing rights or remedies available for enforcement); but see Prince George's Cnty. v. Longtin, 419 Md. 450, 19 A.3d 859 (2011), where the court refused to give retrospective application of a statutory damages “cap” to a previously accrued cause of action.
Muskin, 422 Md. at 561, 30 A.3d at 971-72. We distinguished the vested rights at issue in the case — the extinguishment and transfer of the ownership interest in a ground rent lease— from remedies and evidence rules, and stated that the exception does not apply where the statute eliminates all remedies or “divests a right through instrumentality of the remedy, and under the preten[s]e of regulating it[.]” Id. at 562-63, 30 A.3d at 972-73 (citations omitted) (first alteration in original). Indeed, we determined that Chapter 290 “purported] to regulate vested rights, but in effect remove[d] all remedies and extinguished] those rights completely.” Id. at 563, 30 A.3d at 973. As such, in Muskin, id. at 563, 30 A.3d at 973, we held that the extinguishment and transfer provisions of Chapter 290 impermissibly divested ground rent owners of their real property and contractual vested rights.
Turning to the issue before this Court in this case — the constitutionality of the substitution of lien and foreclosure proceedings for the remedy of ejectment as a consequence for *237 non-payment of ground rent — as in Muskin, I would begin the analysis by first addressing whether Chapter 286 operates retrospectively. As previously stated, this Court has adopted the Landgraf analysis, by which we evaluate a statute for “ ‘fair notice, reasonable reliance, and settled expectations’ to determine ‘the nature and extent of the change in law and the degree of connection between the operation of the new rule and a relevant past event.’” Muskin, 422 Md. at 557-58, 30 A.3d at 969-70. Applying that analysis to Chapter 286 leads to the conclusion that Chapter 286 is a retrospective statute because it impacts the reasonable reliance and settled expectations of ground lease owners by substituting one remedy (ejectment) with another remedy (lien and foreclosure) in circumstances involving residential property.
Nonetheless, I would hold that Chapter 286’s status as a retrospective statute is of no consequence because Chapter 286 does not impermissibly abrogate ground lease owners’ vested rights.
To begin, it is undisputed that Muskin did not address the issue of ejectment as a remedy for nonpayment of ground rent. In Muskin, this Court simply was not confronted with the issue of whether the remedy or action of ejectment was a vested right held by ground lease owners or was indispensable to the right of re-entry. Instead, as discussed above, the sole question in Muskin was whether extinguishment of the entire ground lease and transfer of title to the ground lease tenant for the ground lease owner’s failure to register by the statutory deadline was unconstitutional. At one point, however, in Muskin, in unexplained dicta, we discussed the reversionary interest to re-enter the property if the leaseholder failed to renew as synonymous with the ability to re-enter to eject the ground lease tenant in the event of a default, and lumped both together as being a “right” held by a ground lease owner. See 422 Md. at 559, 30 A.3d at 971 (“A ground rent lease creates a bundle of vested rights for the ground rent owner, a contractual right to receive ground rent payments and the reversion-ary interest to re-enter the property in the event of a default or if the leaseholder fails to renew.” (Emphasis *238 added)). In Muskin, though, despite the instant Majority opinion, it is evident that the reversionary interest if the leaseholder fails to renew the lease is the vested right, not the action or remedy of re-entering the property upon default. See id. at 560, 30 A.3d at 971 (“There can be no reasonable doubt that the reversionary interest to real property and the contractual right to receive ground rent are vested rights under Maryland law.”). In Muskin, we did not hold that the right of re-entry was a vested right, nor did we need to consider any issue of ejectment, as the issue was not before this Court at that time. All that can be clearly gleaned from Muskin is that the contractual right to receive ground rent and the reversionary interest if the leaseholder fails to renew — not re-entering upon default — are vested rights that cannot be impermissibly abrogated by a retrospective statute.
There is no dispute that the reversionary interest in property — where the leaseholder fails to renew at the end of the lease — and re-entering the property in the event of default are distinct. The former is an interest held by the ground lease owner to be exercised automatically upon the termination of the ground lease rent by operation of law, i.e., no court involvement or notice is required. By contrast, re-entering the property in the event of default, via ejectment, is a statutory remedy for nonpayment of ground rent that permits a ground lease owner to bring an action for possession of the property after certain notice is provided to the ground lease tenant, and a ground lease owner obtains a judgment through the trial court to eject the ground lease tenant from the property. The Majority does not dispute that ejectment is a remedy, not part of the reversionary interest.[5] See Majority *239 Op. at 214-15, 216-17, 85 A.3d at 245-46, 246-47. Indeed, the Majority states that the right of re-entry, not the reversionary interest, is the “right to pursue a provided remedy, such as ejectment[.]” Majority Op. at 214, 85 A.3d at 245.
That said, I completely disagree with the Majority’s characterization of the right of re-entry as “vested.” See Majority Op. at 216-17, 85 A.3d at 246-47. A thing does not become a vested right under the law simply because we label it as such. The Majority fails to cite any case law or to provide any support for the proposition that the right of re-entry is a vested right. Instead, as explained by the Honorable Sally D. *240 Adkins in her dissenting opinion, Maryland case law leads to the determination that the right of re-entry is, at best, a contingent right.[6] See Dissent Op. at 217-18, 85 A.3d at 247. Indeed, the Majority concedes as much: “This right of reentry is not a reversion, a possibility of reversion, or an estate in land, but is a mere right or chose in action — a right or power to terminate the estate of the grantee and retake the same if there is a breach of condition — and if it is enforced, the grantor would be in by the failure of the condition and not by a reverter.” Majority Op. at 213, 85 A.3d at 244 (quoting 16 A.L.R.2d 1246). As conceded by the Majority, a review of the history of ground rent leases in Maryland leads to the inescapable conclusion that right of re-entry (re-entering upon default) is distinct from the reversionary interest (where the leaseholder fails to renew); and, prior to the enactment of Chapter 286, the right of reentry involved ejectment — a remedy created by the General Assembly and now replaced by the General Assembly with the remedy of lien and foreclosure.
In sum, in Muskin, although we stated that a ground rent lease creates a “bundle of vested rights” for the ground rent owner — specifically, “a contractual right to receive ground rent payments and the reversionary interest to re-enter the property in the event of a default or if the leaseholder fails to renew” — we never held that the right of re-entry is a vested right or that a specific remedy, such as ejectment, is a part of a bundle of vested rights. Muskin, 422 Md. at 559, 30 A.3d at 971. It is not dispositive that, in Muskin, we used the term “reversionary interest” upon the failure of a leaseholder to renew interchangeably with the term right to “re-enter upon default,” as the use of the terms was done without any analysis into the distinction that exists. Indeed, the dicta in Muskin, id. at 559, 30 A.3d at 971 — that a ground rent lease creates “the reversionary interest to reenter the property in the event of a default or if the leaseholder fails to renew”— *241 demonstrates that this Court, as the Majority now implicitly recognizes, utilized unintended language, failing to differentiate between two very distinct matters, and instead referred to both as the same. Stated otherwise, in Muskin, we improperly considered the right of re-entry on default to be the same as the reversionary interest if the leaseholder fails to renew, and mistakenly labeled both as a part of a bundle of vested rights.
The Majority concedes that the right of re-entry is not the same as the reversionary right — ie., the Majority acknowledges that the right of re-entry upon default is distinct from the reversionary interest if the leaseholder fails to renew — see Majority Op. at 213, 85 A.3d at 244 (“This right of re-entry is not a reversion, a possibility of reverter, or an estate in land, but is a mere ... right or power to terminate the estate of the grantee and retake the same if there is a breach of condition[.]” (Quoting 16 A.L.R.2d 1246)) — but nonetheless insists the right of re-entry is “vested.” This insistence is, however, of no significance. Even if Muskin could possibly be stretched to be interpreted as holding that the right of reentry is a vested right, I would hold, nonetheless, that Chapter 286 does not impermissibly abrogate ground lease owners’ vested rights. Chapter 286, by substituting the remedy of ejectment with the remedy of lien and foreclosure, does not run afoul of the prohibition against statutes that abrogate vested rights. In Muskin, 422 Md. at 561, 30 A.3d at 971, we explicitly stated that an exception to the general prohibition against statutes that abrogate vested rights exists in circumstances where the statute “applies solely to remedies and rules of evidence.”
In identifying this exception, we examined a case relevant to the instant case — Wilson v. Simon, 91 Md. 1, 45 A. 1022 (1900). In Wilson, id. at 4, 45 A. at 1022, while a suit to enforce a mechanic’s lien for materials was pending, the General Assembly repealed all sections of a particular article of the Code of Maryland that provided for liens for materials furnished for the construction of buildings, and enacted statutes providing only for liens for the payment of debts contracted for work. In considering whether the changes by the *242 General Assembly deprived Wilson of a vested right to enforce a mechanic’s lien for materials, we rejected several other jurisdictions’ interpretations that a mechanic’s lien is a vested right, stating:
This peculiar lien does not originate in contact. It is purely a creature of positive statutory enactment, to be maintained and enforced to the extent and in the mode which the statute prescribes[.] ... Nor is it an exact statement of the law that a party, as an incident of his agreement, has a right to all the remedies for the enforcement of the contract in force at the time it was entered into. A party has no right to a particular remedy---- [Undoubtedly a state may regulate at pleasure the modes of proceedings in its courts. And although the new remedy may be deemed less convenient than the old one, and may in some degree render the recovery of debts more tardy and difficult, yet it will not follow that the law is unconstitutional. Whatever belongs to the remedy may be altered according to the will of the state, provided the alteration does not impair the obligation of the contract.
Id. at 6-7, 45 A. at 1028 (internal quotation marks and citations omitted). In Wilson, id. at 7, 45 A. at 1023, we held that the General Assembly could abrogate retrospectively a property or contract right if there are other remedies available, and observed that Wilson’s “right to bring his action, secure judgment and execution, and make sale of [the other]’s property remained unimpaired.” As such, we held: “[T]he effect of the repealing statute was not to impair any of the obligations of [Wilson]’s contract, though it took from him the lien theretofore given him; and that the right to a mechanic’s lien for materials furnished under the law of this state is not a vested right, but an extraordinary remedy only, which the state may discontinue at pleasure.” Id. at 9, 45 A. at 1024.
Here, as in Wilson, it is clear that Chapter 286, far from eliminating all remedies available to ground lease owners, simply substitutes one remedy (ejectment) — of several available remedies — with another adequate remedy (lien and foreclosure). Chapter 286 does not divest ground lease owners’ *243 vested rights through substitution of remedies, nor does it remove all remedies or extinguish or mangle the vested rights beyond recognition. Under Chapter 286, ground lease owners retain the vested contractual right to receive ground rent payments and the vested property right or reversionary interest if the leaseholder fails to renew. The ground lease owner now simply cannot summarily eject a ground rent tenant of residential property and take ownership of all of the tenant’s improvements on the property. Rather, the ground lease owner must obtain a lien and foreclose upon that lien. Such a procedure ensures that the ground lease tenant is provided with adequate notice, as well as procedural safeguards, and ensures that the ground lease owner obtains the past due ground rent — either from the ground lease tenant upon payment of the established lien and associated costs, or from the purchaser of the ground lease at the foreclosure sale. Aside from ground lease owners preferring a quicker remedy, I fail to discern how lien and foreclosure is any less effective or less adequate a remedy than ejectment at securing the ground lease owners’ future enjoyment of ground rent income.
The reasons the Majority provides in holding that the lien and foreclosure remedy does not provide the same safeguards for ground lease owners as ejectment are deficient. The Majority charges that, under lien and foreclosure, a “ground leaseholder is not able ... to terminate the lease such that he could regain the right to present possession of the property.” Majority Op. at 214, 85 A.3d at 245. To begin, the lien and foreclosure remedy was intended to curb abuses in the ejectment system — namely, ground lease owners obtaining title to the improvements on land, such as houses, for a small fraction of past due ground rent and with bare minimum notice. In Baltimore City, for example, it would be a rare piece of land subject to ground rent that did not have a house on it. As recognized by the General Assembly, permitting ejectment to continue as a remedy may result in a windfall for the lessor upon the lessee’s default. Stated otherwise, the lien and foreclosure remedy provides safeguards to ground lease tenants — something that was lacking under the ejectment reme *244 dy. Moreover, the Majority’s statement is simply inaccurate. Under the lien and foreclosure remedy as provided in R.P. § 8-402.3, a ground lease owner can establish a lien in the amount of ground rent due and then enforce that lien through a foreclosure sale. There is nothing in R.P. § 8-402.3 that prohibits the ground lease owner, like any other mortgagee, from bidding at the foreclosure sale and purchasing the property.[7]
Next, the Majority claims that replacing the remedy of ejectment with the remedy of lien and foreclosure “changes the very essence of [ground lease] transactions in this State from a lease subject to rent into a conveyance subject to rent[.]” Majority Op. at 216, 85 A.3d at 246. As discussed above at footnote 1, the distinction between labeling ground rent as a lease subject to rent versus a conveyance subject to rent is of no significance, as, in either circumstance, land is conveyed by the grantor to the grantee — by lease for 99 years renewable “from time to time forever[,]” Kolker, 203 Md. at 141, 99 A.2d at 745, or by fee simple absolute — subject to the payment of ground rent. The lease period, by definition, is longer than the average person’s lifetime, and, in the past, in some instances, it was “next to impossible to find [ ] information” to track down a ground rent owner. See supra Fred *245 Schulte and June Arney, On shaky ground. Finally, the Majority contends that the lien and foreclosure remedy is ineffective because the right of re-entry is a “vested” right. See Majority Op. at 216-17, 85 A.3d at 246-47. Aside from using circular logic, dependent on its holding that the right of re-entry is vested, the Majority also repeatedly implies that a right of re-entry is a lesser right than the reversionary interest, and acknowledges the right is subject to enforcement only upon the failure to pay ground rent.
For the above reasons, I would reverse the circuit court’s grant of appellees’ motion for summary judgment. As the Honorable Sally D. Adkins stated in Muskin in dissent — that this Court should “not strike down the legislature’s enactment of Chapter 290, which is a legitimate, rational law designed to regulate the ground lease system[,]” 422 Md. at 568, 30 A.3d at 976 (Adkins, J., dissenting) (footnote omitted) — I would state the same about Chapter 286, and would hold that Chapter 286 is constitutional and does not impermissibly abrogate ground lease owners’ vested rights.

. "[Gjround rent is found primarily in Maryland and Pennsylvania.” Black’s Law Dictionary 1323 (8th ed. 2004). The Superior Court of Pennsylvania has described "ground rent,” as defined by Pennsylvania law, stating:
In Pennsylvania ground rent is a "perpetual rent reserved to himself and his heirs, by the grantor of land in fee-simple, out of the land conveyed. It is in the nature of an emphyteutic rent. Our Supreme Court ... has further defined ground rent as: "an incorporeal hereditament ... an interest in land distinct and separate from the land out of which it issues----A ground rent is created when the owner of land conveys his whole estate in fee simple to another, reserving for himself a rent service; the grantor has the ground rent estate and the grantee the ownership of the land subject to payment of the ground rent.... A ground rent is assignable---- Such an assignment passes legal title not only to the right of distress, the power to re-enter, etc., but to all the remedies of whatever description which the grantor had against the grantee
Treasure Lake Prop. Owners Ass'n, Inc. v. Meyer, 832 A.2d 477, 482-83 (Pa.Super.Ct.2003) (citations omitted) (some omissions in original). In Pennsylvania, a ground lease owner has several remedies to utilize for nonpayment of ground rent, including: (1) “[a]n action in personam to recover any amount due on a ground rent ... in accordance with the rules governing a civil action[,]” Pa. R.C.P. 1161(a); (2) "[a]n action in rem to enforce a ground rent ... in accordance with the rules governing the action of mortgage foreclosure,” Pa. R.C.P. 1162(a); (3) the "right to distrain for rent due,” Pa. R.C.P. 1163; (4) "the right of *229 entry[,]” Pa. R.C.P. 1163; and (5) "any other remedy provided by law[,]” Pa. R.C.P. 1163.
Although the Majority attempts to distinguish the ground rent system in Pennsylvania from the ground rent system in Maryland, see Majority Op. at 216 n. 19, 85 A.3d at 246 n. 19, characterizing ground rent in Pennsylvania as "a land conveyance subject to rent payments” and ground rent in Maryland as "a lease subject to condition for rent paymentsf,]” such a distinction is meaningless. Although there may exist distinctions in taxation between Maryland and Pennsylvania with regard to ground rent, ground rent in both states boils down to a conveyance of an interest in land, whether in fee simple or by lease, subject to rent payments. Compare Kolker, 203 Md. at 141, 99 A.2d at 745 ("In the ground rent lease, as used in Maryland, the owner of the land in fee simple leases it for the period of 99 years, with a covenant for renewal from time to time forever upon payment of a small renewal fee, upon the condition that the lessee will pay a certain rent[.]”), with Treasure Lake Prop. Owners Ass'n, 832 A.2d at 482-83 ("A ground rent is created when the owner of land conveys his whole estate in fee simple to another, reserving for himself a rent service; the grantor has the ground rent estate and the grantee the ownership of the land subject to payment of the ground rent.” (Citation omitted)). This Court has described the ground rent system in Maryland in the same terms as the system in place in Pennsylvania, i.e., the transfer of land subject to payment of ground rent.

. In Hawaii, there exists a similar system of "ground leases.” The Supreme Court of Hawaii has discussed the history of ground leases within the state as follows:
The State legislature has recognized that Hawaii's limited supply of land is controlled to a great extent by a few large landowners. Some of these fee owners have chosen to lease their property under long-term leases resulting in a shortage of fee simple residential land. *230 Thus, many people ... must accept long-term ground leases in order to acquire the land needed to build their homes. Consequently, long-term ground leases have evolved into sophisticated instruments that grant property rights beyond mere possession. For example, Hawaii residential leases often include a provision that permits lessees to mortgage and sell their leasehold estates, thereby implicating the interests of third parties when lessees mortgage or transfer their leasehold estates. In effect, lessees ... have been granted leasehold title to real property by their lessor, which for commercial and other legal purposes, is similar to fee simple ownership.
Queen Emma Found. v. Tingco, 74 Haw. 294, 845 P.2d 1186, 1190 (1992) (citations and footnote omitted), reconsideration denied, 74 Haw. 650, 849 P.2d 81 (1993). In Tingco, 845 P.2d at 1191, the Supreme Court of Hawaii held “that long-term residential ground leases ... cannot be cancelled or forfeited in a district court summary possession action[,]” a statutory proceeding that enabled a ground lease landlord to regain possession of the property and remove a tenant who is wrongfully in possession, because “the only court that may take cognizance of actions seeking the cancellation or forfeiture of [ground] leases is the circuit court.” The Supreme Court of Hawaii recognized that the "lessee’s interests are of limited duration and require the payment of rent to the leased fee owner[,]” id. at 1190 n. 10, but determined that because a lessee’s leasehold estate may be readily mortgaged, condemned, or assigned, and because “title to real estate is in questionf,]” “a lessor seeking to dispossess a long-term lessee must file his complaint in the circuit court[.]” Id. at 1190.
In Hawaii, as in Maryland, a lessor seeking satisfaction for nonpayment of rent is required to file a complaint in the circuit court — i.e., there is no automatic right to dispossess due to non-payment of rent.

. Black’s Law Dictionary defines "distrain” as follows: "To force (a person, usu. a tenant), by the seizure and detention of personal property, to perform an obligation (such as paying overdue rent).” Black’s Law Dictionary 508 (8th ed. 2004).

. Of note, the prohibition against ejectment was limited to “residential property that is or was used, intended to be used, or authorized to be used for four or fewer dwelling units[,]” R.P. §§ 8-402.3(b)(1), 8-402.2(a)(2); i.e., ejectment remains a remedy that can be employed by ground lease owners for nonpayment of ground rent where the property is:
(i) Leased for business, commercial, manufacturing, mercantile, or industrial purposes, or any other purpose that is not primarily residential;
(ii) Improved or to be improved by any apartment, condominium, cooperative, or other building for multifamily use of greater than four dwelling units; or
(iii) Leased for dwellings or mobile homes that are erected or placed in a mobile home development or mobile home park.
R.P. §§ 8-402.3(b)(2), 8-402.2(a)(l).

. The Majority takes pains to distinguish between a possibility of reverter and a right of entry. See Majority Op. at 211-13, 85 A.3d at 243-44. In so doing, the Majority cites Arthur E. Selnick Assocs., Inc. v. Howard Cnty., 206 Md.App. 667, 695-96, 51 A.3d 76, 93, cert. denied, 429 Md. 529, 56 A.3d 1241 (2012), in which the Court of Special Appeals described the distinctions between a possibility of reverter and a right of entry as follows:
*239 In a fee simple determinable estate, where land is devised for a certain purpose, and it is the testator’s intention that it shall be used for that purpose only, and that on the cessation of such use, the estate shall end without re-entry by the grantor, a possibility of reverter arises.... In a fee simple determinable estate, when the estate is determined, a fee simple absolute estate [is] reestablished in those entitled under the original grantors. It [is] not necessary ... to assert a claim to the fee simple absolute estate or to take any other positive action, as the grantors acquiref ] a fee simple absolute estate by the realization of the possibility of reverter.
In a fee simple subject to a condition subsequent estate, [t]he failure of a condition subsequent ... merely gives rise to a right of entry; the grantor does not obtain a fee simple absolute [estate] until he or she enters and retakes the land. Thus, in a fee simple determinable estate, the grantor’s interest vests in fee simple absolute instantaneously with the failure of the limitation; however, in a fee simple subject to a condition subsequent estate, the grantor must affirmatively exercise his or her right of reentry after the failure of the condition subsequent to obtain title in fee simple absolute.
(Omissions and alterations in original) (citations and internal quotation marks omitted). The Majority also cites The Knights & Ladies of Samaria v. Bd. of Educ. Of Charles Cnty., 113 Md.App. 656, 665 n. 4, 688 A.2d 933, 937 n. 4 (1997), in which the Court of Special Appeals emphasized the "sharp distinction” that exists between the possibility of reverter and the right of entry, explaining:
[T]he failure of a special limitation, such as a possibility of reverter, results automatically in the reversion of an estate to the original grantor in fee simple absolute without the need for entry. The failure of a condition subsequent, however, merely gives rise to a right of entry; the grantor does not obtain a fee simple absolute until he or she enters and retakes the land.
(Citations omitted). These cases support the very proposition at the heart of the matter — that the reversionary interest if the leaseholder fails to renew is distinct from re-entering the property upon default, via ejectment.

. Assuming as the Majority contends that there exists a separate right of re-entry provided by a source other than the statutory ejectment process, the right is at most contingent. See Majority Op. at 214-16, 85 A.3d at 245-46.

. If the ground rent is redeemable — i.e., a ground rent created after April 8, 1884, that provides the leasehold tenant the right to redeem the ground lease, see R.P. § 8-110.1(a)(8); R.P. § 8-110(f); Frank A. Kaufman, The Maryland Ground Rent—Mysterious But Beneficial, 5 Md. L.Rev. 1, 20 (1940) — -the foreclosure purchaser "take[s] title to the property free and clear of the ground lease[.]” R.P. § 8-402.3(n)(3)(i). If the ground rent is irredeemable- — i.e., "a ground rent created under a ground lease executed before April 9, 1884, that does not contain a provision allowing the leasehold tenant to redeem the ground rent[,]” R.P. § 8 — 110.1(1)(5)—the foreclosure purchaser "take[s] title to the property subject to the ground lease.” R.P. § 8-402.3(n)(3)(ii). Hence, for irredeemable ground leases, the ground lease owner is not in danger of losing possession of the ground lease, and may also purchase improvements on the property. For redeemable ground leases, the ground lease owner’s ownership interest was subject to redemption pursuant to the terms of the lease; under the new statute, a redemption amount is paid to the ground lease owner from the foreclosure sale proceeds. See R.P. § 8-402.3(n)(3)(i). Thus, the Majority’s point is inaccurate.